# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR GAMINO, | Case No. 1:18-cv-00391-LJO-SAB |
| Plaintiff, | SCREENING ORDER REQUIRING PLAINTIFF TO EITHER NOTIFY THE COURT THAT HE IS WILLING TO PROCEED ON THE CLAIM FOUND TO BE COGNIZABLE OR FILE AN AMENDED COMPLAINT |
| v. | |
| YOSEMITE COMMUNITY COLLEGE DISTRICT, et al., | |
| Defendants. | (ECF No. 1) |
| | THIRTY-DAY DEADLINE |

Plaintiff Taylor Gamino filed this action alleging violation of the Americans with Disabilities Act on March 22, 2018. Currently before the Court is Plaintiff's complaint.

## I.

## SCREENING REQUIREMENT

Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of in forma pauperis proceedings which seek monetary relief from immune defendants); Cato v. United States, 70

F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss in forma pauperis complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim). The Court exercises its discretion to screen the plaintiff's complaint in this action to determine if it "i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the pro se complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

## II.

## COMPLAINT ALLEGATIONS

Taylor Gambino is a student with disabilities arising from a congenital condition. (Compl. 17,[1] ECF No. 1.) Plaintiff attended a class that was instructed by Elda Bautista on

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

March 22, 2016.  (Id.)  That morning Plaintiff had taken a test in the Disabled Student Program & Services ("DSPS") Testing center pursuant to his approved accommodations.  (Id.)  At the beginning of the semester, Ms. Bautista had agreed to allow Plaintiff to use this accommodation for testing as long as the test was in before the next class.  (Id.)  Prior to March 22, 2016, Plaintiff had taken several tests using this accommodation.  (Id.)

On March 22, 2016, while in class, Ms. Bautista asked Plaintiff when he had taken the test because she had not received it.  (Id.)  Ms. Bautista mentioned the accommodation in front of other students and that allowing Plaintiff to take the test pursuant to the accommodation was unfair to the other students.  (Id.)  Ms. Bautista informed Plaintiff that he would have to take tests with the class.  (Id.)  Several students turned and looked at Plaintiff causing him embarrassment.  (Id.)

With his accommodation, Plaintiff was allowed to take the test after the other students and by making him take the test with his class, Plaintiff was deprived of time to study.  (Id. at 18.)  On March 23, 2016, Plaintiff wrote Ms. Bautista an e-mail, copied to the dean, counselor Derek Waring, and President Jill Stearns.  (Id.)  The only response Plaintiff received was from Laura Maki, Interim Dean of Science, Math, and Engineering informing him that the e-mail had been received and that they would look into the issue.  (Id.)  Plaintiff did not receive any other response until 15 months later, after an incident with another instructor.  (Id.)

Plaintiff was not informed of any corrective action or changes that were taken to ensure that the conduct of Ms. Bautista would not occur again by her or any other instructor.  (Id. at 24.)  Plaintiff repeatedly asked what changes were made to address the problem of teachers not complying with DSPS accommodations and privacy rights and was told by Dean Banuelos, Lonita Cordova and Lloyd Jackson that no changes were made in response to Plaintiff's complaints.  (Id.)

On August 29, 2016, Plaintiff was talking a class in the auto shop at Turlock High School taught by John Peterson.  (Id. at 19.)  Plaintiff had not received his updated accommodations because he was unable to get an appointment with the DSPS office until later to renew his accommodations.  (Id.)  Plaintiff provided Mr. Peterson with his accommodations from the

previous semester.  (Id.)  Mr. Peterson approved the accommodation that he take tests at the DSPS Testing Center and record lectures.  (Id.)

Plaintiff was frequently used as an example by Mr. Peterson in lessons.  (Id.)  Plaintiff was taking to another student prior to class about using a tuner on his car and Mr. Peterson injected himself into the conversation asking Plaintiff what he thought it did.  (Id.)  Plaintiff did not know the answer but explained what he thought it did while everyone was looking at him.  (Id.)  Mr. Peterson started off the class by saying, "okay class, there are things we know, things we don't know, and things we think we know."  (Id.)  Mr. Peterson then explained that you can use the tool Plaintiff used on a window to make it slide up and down faster.  (Id.)  Plaintiff was embarrassed and felt like he was made to look stupid.  (Id.)

Plaintiff asked Mr. Peterson if he could bring a part that he had purchased to class so he could install it in his car.  (Id. at 20.)  Mr. Peterson told Plaintiff to bring it so that he could have a look at it.  (Id.)  Plaintiff brought the item in during a break in the class session.  (Id.)  Mr. Peterson took the item and they walked out to Plaintiff's car.  (Id.)  Other students gathered around the car.  (Id.)  Mr. Peterson began to yank aggressively on the bumper of Plaintiff's car causing Plaintiff to be alarmed.  (Id.)  Mr. Peterson told Plaintiff that his bumper was terrible and it was loose.  (Id.)  Plaintiff said that he believed it was torqued to dealer's specs and that he had taken the bumper off earlier.  (Id.)  Mr. Peterson replied, "well, there's your problem."  (Id.)  Plaintiff felt embarrassed again in front of the class.  (Id.)  Mr. Peterson told Plaintiff that his bumper was too loose for the part that he wanted to install and kicked the bumper.  (Id.)  Plaintiff looked alarmed, and Mr. Peterson apologized.  (Id.)  As they returned to class, Mr. Peterson told Plaintiff that he just needed to look on You Tube and it was very simple to find out how to install the part.  (Id.)

Plaintiff thought this was all part of workshop razzing until another student said, "Wow, Mr. Peterson really doesn't like you."  (Id.)  When students were paired up to work on engines, Plaintiff would be paired with two students who rarely attended.  (Id.)  When they did attend one of the students smelled strongly of marijuana which was distracting.  (Id.)  The other student would arrive unprepared and without even writing paper or a writing utensil.  (Id.)

On one occasion, Mr. Peterson was discussing tests and the dumb answers that he received. (Id.) He read answers from some of the tests in his hand. (Id.) He handed out the tests and Plaintiff's was one of the first names that was called, making it obvious that Plaintiff's was the test that had been read from and contained a dumb answer. (Id.)

On September 14, 2016, Mr. Peterson was unclear about the date on which a tool test was to be taken. (Id.) He stated they would see if there was time at the end of class. (Id.) When they were starting to take the test, Plaintiff quietly told Mr. Peterson that he would not be able to take the test because the testing center was too far away and was closed. (Id.) Mr. Peterson replied in a voice loud enough for other students to hear that the test was easy. (Id. at 21.) Plaintiff told Mr. Peterson that it did not matter how easy the test was, he had to take it at the testing center. (Id. at 21.) Another student sitting behind Plaintiff stated that he was also supposed to take the test at the testing center. (Id.) Mr. Peterson asked Plaintiff what his disability was loud enough for other students to hear and Plaintiff felt humiliated. (Id.) Plaintiff felt forced to answer the question and then Mr. Peterson stated again that Plaintiff did not understand how easy the test was. (Id.) Mr. Peterson handed out the test and Plaintiff felt forced to take it. (Id.)

On September 15, 2016, Plaintiff called the DSPS to ask for help and received an appointment for September 19, 2016. (Id.) Plaintiff asked Claudia Puebla, a DSPS counselor about his rights as DSPS student. (Id.) Ms. Puebla gave him zero information about his rights as a disabled student so he could advocate for himself. (Id.)

Plaintiff and his mother tried to push Claudia Puebla to send an e-mail to Mr. Peterson about what had happened. (Id.) Claudia Puebla wanted to wait and see if it happened again. (Id.) Plaintiff did not want to wait until his rights were violated again, especially since the same thing had happened six months earlier with Ms. Bautista. (Id. at 22.) Plaintiff left with the understanding that Ms. Puebla would send Mr. Peterson an e-mail about the incident and what is required from instructors with DSPS students. (Id.)

Plaintiff attended class on September 19, 2016, and nothing was said to him. (Id.) Mr. Peterson acted to Plaintiff in the same manner as he had prior to the incident. (Id.) Plaintiff

assumed that Mr. Peterson had not checked his e-mail or seen an e-mail from Ms. Puebla. (Id.)

Plaintiff attended class on September 21, 2016, and Mr. Peterson called roll. (Id.) Mr. Peterson called Plaintiff's name and Plaintiff responded that he was present. (Id.) Mr. Peterson stated that he knew Plaintiff was there and told the class that he had received an e-mail and wanted to review it. (Id.) He put the e-mail from Ms. Puebla up on the screen for the entire class to see. (Id.) Plaintiff felt humiliated. (Id.) Mr. Peterson read the e-mail out loud and discussed it. (Id.) Another student in the class stated that they should not be seeing the e-mail. (Id.) Mr. Peterson asked Plaintiff if he understood the e-mail and Plaintiff responded that he did. (Id.) Plaintiff tried to contact Ms. Puebla the following day.

While leaving the auto shop class Plaintiff approached his car that was in a handicapped space. (Id.) Plaintiff had a handicap placard displayed as required by law. (Id.) There was a Chevy Trailblazer parked horizontally blocking him in and another large truck parked on the other side so he was not able to get out of the parking space. (Id.) There were three people with the vehicles. (Id.) Plaintiff asked a woman in the group if they needed help and she asked if he had any money. (Id. at 23.) He stated he did not. (Id. at 23.) The people made no attempt to move their vehicles and Plaintiff told them he wanted to get his car out. (Id.) The woman replied that her battery was dead. (Id.) He asked if they needed a jump. (Id.) A man with the group said you have a nice handicap vehicle there and asked what kind of handicap Plaintiff had. (Id.) Plaintiff responded that he has hypo plastic right heart syndrome and has had 4 open heart surgeries and a stroke while showing them his scar from the surgery. (Id.) The man congratulated Plaintiff and applauded him for taking college classes. (Id.) The woman started her car and left. (Id.)

Plaintiff reported this incident to Yosemite Community College District and Modesto Junior College, including Dean Banuelos and James Todd, Vice President of Student Services. (Id.) Plaintiff believes that the individuals who are harassing and intimidating him are teachers or coaches at Turlock High School. (Id.) No action was taken to address the issue with Turlock High School even though Modesto Junior College students are forced to attend classes at Turlock High School. (Id.)

After Plaintiff made a complaint about the incident with Mr. Peterson, Plaintiff received a response regarding the incident with Ms. Banuelos.  (Id. at 24.)  In July 2017, Plaintiff received a letter from Dean Banuelos which was vague.  (Id.)  Plaintiff sought clarification and wanted answers regarding whether his factual allegations had been confirmed.  (Id.)  He never received a response to this question.  (Id.)

After the September 21, 2016, incident with Mr. Peterson, Plaintiff contacted Ms. Puebla and was told that she did not handle these incidents.  (Id. at 25.)  Plaintiff was directed to Dean Pedro Mendez.  (Id.)  Plaintiff met with Dean Mendez on September 23, 2016, regarding his complaint about Mr. Peterson and to complain that Ms. Puebla had not provided him with the Codes and laws that relate to his rights.  (Id.)  Plaintiff requested that Mr. Peterson be fired and for all counselors to receive training on student rights to share with the disabled students.  (Id.)  Dean Mendez told Plaintiff that he could not discuss any disciplinary action that might be taken against a teacher because the teacher also has rights.  (Id.)

Plaintiff asked to drop Mr. Peterson's class and was told that he would receive a "W" if the class was dropped.  (Id. at 26.)  Dean Mendez explained to Plaintiff that the incident was being looked into and that it is a process.  (Id.)  Plaintiff's mother was in attendance and asked what the process was and how long it would take.  (Id.)  Dean Mendez stated he was not sure but that he would inquire and e-mail details.  (Id.)  Plaintiff's mother stated that he would be dropping the class and wanted the "W" removed and the military to be refunded the tuition.  (Id.)  Dean Mendez showed Plaintiff and his mother where the standard form was on the website to file a complaint, but he did not open the link or print out a form for them.  (Id.)  Dean Mendez told them he would handle their complaint and they could file an official complaint later if they wished.  (Id.)  Dean Mendez did follow up and let them know that the W for the class had been removed and the military has been refunded the tuition, but Plaintiff has not received proof of the refund.  (Id.)

Plaintiff attempted to file an online complaint with Modesto Junior College but could not get through.  (Id.)  On March 17, 2017, Plaintiff filed a discrimination complaint with Modesto

Junior College and a complaint with the Office of Civil Rights. (Id.) On April 26, 2017,[2] Plaintiff was contacted by Judy to set up an appointment with Dean Banuelos. (Id.) Plaintiff asked for an agenda for the meeting and was told there was no agenda. (Id.) On May 3, 2017, Plaintiff and his mother attended a meeting with Dean Banuelos. (Id.) Dean Banuelos told Plaintiff that he had received the complaint and wanted to understand what had happened. (Id.) They had a long discussion. (Id.) Plaintiff was told that Mr. Peterson was still teaching but there were other ways that he could be disciplined. (Id.) Dean Banuelos told Plaintiff that he truly cares about his situation. (Id.) Plaintiff's mother asked then why did it take eight months for them to arrange a meeting. (Id.) Dean Banuelos told Plaintiff that he welcomes Office of Civil Rights attorneys and wanted Plaintiff to feel safe to come back to school. (Id.) Dean Banuelos asked to meet with them again in a few weeks. (Id.)

Plaintiff and his mother met with Dean Banuelos again on June 8, 2017. (Id.) Dr. Cordova was also present at this meeting and asked Plaintiff what they could do so he would attend classes. (Id. at 27.) Dean Cordova told Plaintiff that Modesto Junior College was a safe place, but Plaintiff does not feel safe. (Id.) Plaintiff wanted to know what was being done to make sure that he did not have any further similar incidents in the future and he did not receive a response. (Id.) Dean Banuelos got upset, threw a piece of paper, and said that Plaintiff went to the Office of Civil Rights first. (Id.) Plaintiff's mother replied that was incorrect. (Id.) Plaintiff felt very intimidated like he had done something wrong by filing the complaint with the Office of Civil Rights. (Id.) Dean Banuelos told Plaintiff that his mother was entitled to her opinion, but that he was there to help Plaintiff. (Id.) Plaintiff responded that they could not separate him and his mother and what the school had done has affected his entire family. (Id.) Plaintiff asked again about the complaint process and was told that it was on the college website. (Id.) Dr. Lonita Cordova located some forms but did not explain how long the process takes or what is involved. (Id.)

Plaintiff and his mother met with Dr. Todd on June 28, 2017. (Id.) Dr. Todd explained

---

[2] Plaintiff's complaint states April 26, 2016, however the Court assumes this is an error. Similarly, the Court finds other such errors in Plaintiff's complaint.

that he did not know anything so they would need to tell him what had happened and he would
take notes. (Id. at 28.) Plaintiff's mother asked why he did not have a file. (Id.) Dr. Todd said
that he wanted to hear from them what had happened. (Id.) Plaintiff told Dr. Todd that he had
explained his story numerous times over the months and his mother asked if Dr. Todd had
spoken to anyone in preparation for the meeting. (Id.) Dr. Todd stated that he had spoken to
Dean Banuelos contrary to his statement that he did not know anything. (Id.) Plaintiff's mother
tried to find out the status of the grievance process. (Id.) Plaintiff asked what the process was.
(Id.) Dr. Todd said that they should receive a response in a few days from Dean Banuelos. (Id.)
Dr. Todd told them that he gathers information when it gets to his level. (Id.) Plaintiff pressed
on what the process was and was told there was a process. (Id.) Plaintiff was told that the
process for handling complaints against teachers was not public and would not be discussed. (Id.
at 29.) It would be handled internally. (Id.)

Dr. Todd explained the training provided to DSHS counselors and their role is to
advocate for students and provide services and accommodations. (Id.) When asked about the
grievance process, Dr. Todd directed them to his assistant Geri Vargas and another woman in the
office who only provided a complaint form. (Id.)

Following the meeting with Dr. Todd, Plaintiff contends that he experienced multiple
delays and obstruction in getting his questions answered. (Id.) Dan Bautista initially told
Plaintiff they could meet the afternoon of August 7, 2017, after Plaintiff e-mailed him of his
intent to record the meeting it was cancelled. (Id. at 29.) Plaintiff was told that Dr. Cordova is
the ADA coordinator and would be reaching out to Plaintiff to discuss his questions. (Id.)

Plaintiff again asked for a meeting with Dean Banuelos on August 7, 2017, instead he
received an e-mail from Dr. Cordova on August 8, 2017 regarding scheduling a meeting. (Id. at
30.) Plaintiff was informed that the college would record the meeting and that no other
recording was allowed. (Id.) Plaintiff followed up by asking why he could not meet with Dr.
Banuelos and what law prohibited him from recording the meeting. (Id.) Plaintiff received a
reply that Dr. Banuelos was no longer employed at the institution and that he would be allowed
to record the meeting. (Id.) The response also recognized that Plaintiff had not been extended

the appeal process and he was advised that he could file an appeal by August 31, 2017.  (Id.)

Plaintiff attempted to schedule a meeting with Dr. Cordova and was told that August 23, 2017, was available and then later advised that she could not meet before August 28, 2017.  (Id.) Plaintiff responded that he needed to get answers to his questions to file his appeal by August 31, 2017.  (Id.)  Dr. Cordova agreed to meet in a different location on August 23, 2017, and Mr. Jackson would also be attending the meeting.  (Id.)

Although Plaintiff requested in advance that Dr. Cordova have his file with all materials present for the meeting, his file was not present.  (Id.)  Dr. Cordova and Mr. Jackson were unable to answer all Plaintiff's questions stating that they would need to review the file.  (Id.)  Mr. Jackson told Plaintiff that he would respond to his questions by August 30, 2017.  (Id.)  Plaintiff asked if any policies or procedures had been changed due to his complaints and it was made clear that no policies had been changed.  (Id.)  Plaintiff left the meeting without being assured that similar incidents would not occur in the future.  (Id. at 32.)

Plaintiff received a response from Mr. Jackson on August 31, 2017, and did not receive a specific response to most of the questions that were asked at the August 23, 2017 meeting.  (Id.)

Plaintiff brings this action against Yosemite Community College District, Modesto Junior College, Elda Bautista, John Peterson, Claudia Puebla, Pedro Mendez, Francisco Banuelos, James Todd, Lonita Cordova, and Lloyd Jackson alleging violation of the Americans with Disabilities Act, Rehabilitation Act, and the First Amendment.  He is seeking monetary damages and injunctive relief.

**III.**

**DISCUSSION**

**A.     Americans with Disabilities Act and Rehabilitation Act**

1.     <u>Discrimination</u>

Title II of the Americans with Disabilities Act ("ADA") and section 504 of the Rehabilitation Act prohibit discrimination on the basis of disability."  <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1052 (9th Cir. 2002).  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Similarly, the Rehabilitative Act ("RA") provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052; accord Martin v. California Dept. of Veterans Affairs, 560 F.3d 1042, 1047 (9th Cir. 2009). "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Lovell, 303 F.3d at 1052. As there is no significant difference in the analysis of rights and obligations under the two Acts, Miller v. Monroe Sch. Dist., 159 F.Supp.3d 1238, 1249 (W.D. Wash. 2016), the Court analyzes the claims together.

  a. <u>Plaintiff has failed to allege sufficient facts to state a claim that he is a qualified individual with a disability under the statute</u>

To state a claim, Plaintiff bears the burden to show that he is a qualified individual with a disability under the statute. Zukle v. Regents of Univ. of California, 166 F.3d 1041, 1047 (9th Cir. 1999). Here, Plaintiff has not alleged sufficient facts to support a conclusion that he was disabled under the ADA. The complaint alleges that Plaintiff has disabilities arising from a congenital condition and that he has hypo plastic right heart syndrome and has had 4 open heart surgeries and a stroke. In relevant part, the ADA defines a "disability ... with respect to an individual" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Major life life activities include "caring

for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Subject to exceptions not relevant in this case, Section 504 defines "disability" and "individual with a disability" as "the meaning given to it" in 42 U.S.C. § 12102. 29 U.S.C. § 705(9)(B), (20)(B); 29 U.S.C. § 794(a).

Plaintiff's complaint is devoid of any allegations that his medical condition substantially limits one or more major life activity such that he would be a qualified individual under the statute. Even if the Court could assume that Plaintiff has some impairment from his hypo plastic right heart syndrome and 4 open heart surgeries and a stroke, living with an impairment does not necessarily mean that one is protected by the ADA. French v. Idaho State AFL-CIO, 164 F. Supp. 3d 1205, 1218 (D. Idaho 2016). Absent factual allegations as to the nature and extent of Plaintiff's impairments, the allegation that Plaintiff has a diagnosis and has received treatment is insufficient to plausibly allege that he is disabled under the Act.

     b.   <u>Plaintiff has failed to allege sufficient facts to show that he was discriminated against due to a disability</u>

The RA regulations require educational institutions "to provide a disabled student with reasonable accommodations to ensure that the institution's requirements do not discriminate on the basis of the student's disability." Zukle, 166 F.3d at 1046. "Similarly, the ADA's implementing regulations require a public entity to 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity.' " Zukle, 166 F.3d at 1046 (quoting 28 C.F.R. § 35.130(b)(7)).

Here, Plaintiff has applied for and received an accommodation by the school district to take tests in the DSHS Testing Center and to record class lectures. Plaintiff alleges two incidents in which he alleges that he did not receive accommodations for his disability. First, Ms. Bautista told Plaintiff that it was unfair to the other students in the class that he take the test at a different time then they did and he would be required to test with or before the other students in class.

While Plaintiff alleges that this denied him of additional time to study, there is no evidence that this was the purpose of the accommodation. It appears from the complaint that the reason for the accommodation was to allow Plaintiff to take the test away from the classroom environment. Plaintiff was taking night classes and the testing center was only open until 5:00 p.m. The students were taking the test in the evening and Plaintiff had been allowed to take the test the following morning. However, after the event that Plaintiff complains about, Ms. Bautista continued to allow Plaintiff to take the test pursuant to his accommodation, but he was required to take the test the same day as the other students in the class. Requiring Plaintiff to take the test on the same day as the other students in the class with his accommodation is insufficient to allege that Plaintiff was excluded from participation in or otherwise discriminated against with regard to his education.

On a second occasion, Mr. Peterson administered an unexpected tool test and told Plaintiff it was so easy he would be able to take it in class. The allegations in the complaint demonstrate that Mr. Peterson did not act intentionally to discriminate against Plaintiff, but that he believed that the test was so simple that Plaintiff would not have a problem with it. As alleged in the complaint, Mr. Peterson repeated told Plaintiff that Plaintiff did not understand how simple this test was going to be. The allegations are insufficient to plausibly allege that Mr. Peterson actions were taken to deliberately discriminate against Plaintiff due to his disability. Further, Plaintiff has not included any allegations that he was unable to pass the "easy" tool test due to being required to take it with the other students. Zukle, 166 F.3d at 1050 (plaintiff failed to show any prejudice because she was able to pass the test even without the accommodation).

Plaintiff also alleged that on one occasion he was leaving a night class and there were other cars blocking his vehicle preventing him from leaving. While Plaintiff speculates that these individuals were teachers or coaches at the high school, the allegations fail to demonstrate that any of the individuals named in the complaint were involved in this incident nor does this single incident plausibly suggest a claim under the ADA or RA.

The claims alleged against the other named defendants are based on their response to Plaintiff's complaints against these two instructors for the failure to accommodate and for the

incident where some private individuals blocked Plaintiff's car following an evening class at the high school. The allegations do not demonstrate a failure to accommodate a disability. While Plaintiff was unhappy with the manner in which his complaints were handled, this is insufficient to state a cognizable claim that he was excluded from participation in or otherwise discriminated against with regard to his education. Plaintiff had received an accommodation and when he complained that Mr. Peterson had not complied with the accommodation, the college responded by sending an e-mail to Mr. Peterson. None of the responses from the school officials of which Plaintiff complains are sufficient to demonstrate that Plaintiff was excluded from participation in or otherwise discriminated against with regard to his education. Plaintiff's fear that he might have a similar incident in the future is insufficient for the Court to reasonably infer that he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities.

2. Retaliation

Both the ADA and the RA contain anti-retaliation provisions which are analyzed under the same standard. Lee v. Natomas Unified Sch. Dist., 93 F.Supp.3d 1160, 1167 (E.D. Cal. 2015). To state a claim of retaliation, Plaintiff must show that: (1) he engaged in a protected activity; (2) the defendant knew he was involved in a protected activity; (3) an adverse action was taken against him; and (4) a causal connection exists between the protected activity and the adverse action. Lee, 93 F.Supp.3d at 1167. Pursuing your rights under the ADA constitutes protected activity. Pardi v. Kaiser Found. Hosps., 389 F.3d 840, 850 (9th Cir. 2004).

As Plaintiff has failed to demonstrate that he was a qualified individual, he fails to state a plausible retaliation claim under the ADA or RA.

3. Liability under the ADA and RA

Finally, Plaintiff attempts to allege claims against numerous individuals under the ADA and RA. However, the ADA provides that covered individuals cannot "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. A public entity is any state or local government or a department, agency or other instrumentality of a State or local

government.  42 U.S.C. § 12131(1).  Defendants cannot be sued in their individual capacities under the ADA.  Steshenko v. Albee, 42 F.Supp.3d 1281, 1290 (N.D. Cal. 2014); Becker v. Oregon, 170 F.Supp.2d 1061, 1066 (D. Or. 2001); Thomas v. Nakatani, 128 F.Supp.2d 684, 692 (D. Haw. 2000), aff'd, 309 F.3d 1203 (9th Cir. 2002); Cable v. Dep't of Developmental Servs. of State of Cal., 973 F.Supp. 937, 943 (C.D. Cal. 1997).

Similarly, the RA provides that no qualified individual shall "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).  A program or activity is defined as the operations of departments, agencies, or other instrumentalities of a State or local government.  29 U.S.C. § 794(b).  Since individuals do not receive financial assistance for purposes of the Rehabilitation Act, courts hold there is no individual liability under the RA.  Becker, 170 F.Supp.2d at 1067; Lollar v. Baker, 196 F.3d 603, 609 (5th Cir. 1999).

There is no personal liability under the ADA or the RA, and Plaintiff cannot bring an action against the named defendants in their individual capacities under the ADA or RA.  Garcia v. S.U.N.Y Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); Becker, 170 F.Supp.2d at 1066.  However, Plaintiff may bring suit against the defendants in their official capacities.  Bruggeman ex rel. Bruggeman v. Blagojevich, 324 F.3d 906, 912 (7th Cir. 2003); Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 374 n.9 (2001).

"The Eleventh Amendment bars suits for money damages in federal court against a state [and] its agencies . . ." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007), "regardless of the relief sought, unless the state unequivocally consents to a waiver of its immunity," Yakama Indian Nation v. State of Washington, 176 F.3d 1241, 1245 (9th Cir. 1999); see also Seminole Tribe of Fla. v. Florida, 116 S. Ct. 1114, 1122 (1996).  .  A suit brought against state officials in their official capacity is generally equivalent to a suit against the state itself.  McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986).  The Ninth Circuit has held that state community college districts are dependent instrumentalities of the State of California.  Cerrato v. San Francisco Cmty. Coll. Dist., 26 F.3d 968, 972 (9th Cir. 1994).  Therefore, Plaintiff cannot bring a claim under the ADA or RA for monetary damages.

**B.     Section 1983**

Plaintiff alleges that his First Amendment right to freedom of speech, right be free from retaliation, and right to informational privacy were violated.  Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  There is no respondeat superior liability under section 1983, and therefore, each defendant is only liable for his or her own misconduct.  Iqbal, 556 U.S. at 677.

To state a claim under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  In a section 1983 action, the complaint must allege that every defendant acted with the requisite state of mind to violate underlying constitutional provision.  OSU Student Alliance v. Ray, 699 F.3d 1053, 1070 (9th Cir. 2012).

1.     Retaliation Under the First Amendment

Although Plaintiff alleges that his right to freedom of speech was abridged, Plaintiff does not allege any facts to state a plausible claim that school officials took any actions to prevent him from speaking.  Similarly, Plaintiff has not alleged any facts that would implicate the right to freedom of the press.  The facts alleged in the complaint speak to retaliation in violation of the First Amendment.

To state a retaliation claim under the First Amendment, Plaintiff must allege "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct."  O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016).

Plaintiff alleges that he complained that Mr. Peterson had violated his rights under the ADA by requiring him to take a test in class.  Asserting his rights under the ADA is protected speech entitled to protection under the First Amendment.

1    Plaintiff states that after Mr. Peterson received an e-mail regarding Plaintiff's complaint

2    Mr. Peterson called him out in class, reading and exhibiting the e-mail, while asking Plaintiff if

3    he understood.  At the pleading stage, this is sufficient to allege adverse action that would chill

4    an individual from engaging in the protected activity.  Plaintiff has stated a cognizable claim

5    against Mr. Peterson for retaliation in violation of the First Amendment.

6    However, there are no other allegations contained in the complaint that would be

7    sufficient to state a cognizable retaliation claim against any other named defendant for

8    retaliation.  Generally, Plaintiff is alleging that following his complaints he was unhappy with

9    the action taken by the school officials and their responses to his questioning.  But Plaintiff does

10   not have a right under the First Amendment to have his questions answered in a specific manner.

11   Further, as Plaintiff was advised by numerous school officials, personal actions are private and

12   Plaintiff was not entitled to know the specific action that was taken against Mr. Peterson nor did

13   the district have an obligation under federal law to comply with Plaintiff's demand that Mr.

14   Peterson or any other employee be fired.

15   Finally, Plaintiff complains that he was not allowed to meet with specific administrators,

16   his file was not present during meetings, and that he was not provided with the specific

17   procedures that would be used to address his complaints.  None of this is sufficient to state a

18   plausible claim implicating the First Amendment.

19          2.    Right to Privacy

20   Plaintiff alleges that this right to privacy was violated by Ms. Bautista and Mr. Peterson

21   by discussing his test accommodation in front of the class.  "The federal Constitution contains no

22   provision expressly setting forth or guaranteeing a constitutional right of 'privacy[,]' "  Am.

23   Acad. of Pediatrics v. Lungren, 16 Cal.4th 307, 326 (1997), but courts have held that there are

24   some privacy rights that are within those fundamental rights that are protected by the Due

25   Process Clause of the Fourteenth Amendment, Planned Parenthood of Se. Pennsylvania v. Casey,

26   505 U.S. 833, 847 (1992).

27          "In two cases decided more than 30 years ago, [the Supreme Court] referred broadly to a

28   constitutional privacy 'interest in avoiding disclosure of personal matters.' "  Nat'l Aeronautics

& Space Admin. v. Nelson, 562 U.S. 134, 138 (2011) (quoting Whalen v. Roe, 429 U.S. 589, 599–600 (1977); Nixon v. Administrator of General Services, 433 U.S. 425, 457 (1977)). The Court recognized that there are two kinds of privacy interests: 1) an individual's interest in avoiding disclosure of personal matters; and 2) an individual's interest in making certain kinds of important decisions. Whalen, 429 U.S. at 599. In Nelson, the Supreme Court assumed without deciding that there was a constitutional right to informational privacy. Nelson, 562 U.S. at 138.

The Ninth Circuit has recognized a constitutional protected privacy interest in avoiding disclosure of personal matters which encompasses medical records, although the Supreme Court has never so held. Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260, 1269 (9th Cir. 1998); Seaton v. Mayberg, 610 F.3d 530, 537 (9th Cir. 2010). "Some courts have held that where the government releases information, it must be of a highly personal nature before constitutional privacy rights will attach." Arakawa v. Sakata, 133 F. Supp. 2d 1223, 1228 (D. Haw. 2001).

Here, Plaintiff raised the issue of his accommodation in front of the class and the teachers were merely responding to his concerns regarding test taking. The Court finds that the allegations in the complaint are insufficient to state a claim that Ms. Banuelos or Mr. Peterson disclosed information of such a highly personal nature that it would be entitled to protection under the First Amendment. The complaint does contain any allegations that either instructor was aware of, much less disclosed to the class, any medical information that could potentially be entitled to protection. Plaintiff alleges that it was disclosed that he was taking his tests in the testing center rather than in the classroom with the other students. But this would be obvious as Plaintiff did not take his tests with the class. To the extent that any right to informational privacy exists, Plaintiff has failed to allege facts that would be sufficient for the Court to reasonably infer that any named defendant violated his right to informational privacy.

**C.     Injunctive Relief**

The federal court's jurisdiction is limited in nature and its power to issue equitable orders may not go beyond what is necessary to correct the underlying constitutional violations which form the actual case or controversy. 18 U.S.C. § 3626(a)(1)(A); Summers v. Earth Island

Institute, 555 U.S. 488, 493 (2009); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103-04 (1998); City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983); Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010).

Plaintiff seeks injunctive relief to put in place corrective action including requirements for better training, reporting procedures, clear grievance procedures, and written explanations of the grievance process as well as time frames within which such investigations should be completed. However, the relief Plaintiff seeks goes beyond what would be necessary to correct the underlying constitutional violation that has been found to be cognizable in this action. Plaintiff's claim that Mr. Peterson retaliated against him for reporting an alleged violation of his accommodation does not provide standing for this Court to order the college to overhaul its grievance system. If Plaintiff chooses to proceed on the claims found to be cognizable this action will proceed for monetary damages.

### D. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Plaintiff shall be granted an opportunity to file an amended complaint to attempt to cure the deficiencies identified in this order if he so desires. Plaintiff is advised that under Rule 8 of the Rules of Civil Procedure a complaint is to state "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint is neither short nor plain. It is thirty-seven pages in length, and provides a detailed discussion of every event that is alleged. The purpose of the complaint is not to set forth everything that happened; and the complaint only need contain sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Iqbal, 556 U.S. at 678.

Based upon the allegations contained in the complaint, the Court provides Plaintiff with the following requirements for his amended complaint. Plaintiff's amended complaint shall not exceed twenty pages in length and must be double spaced using a size 12 Time New Roman or similar font. Plaintiff's complaint shall not contain any legal argument, but should briefly set forth factual allegations and identify the claims which Plaintiff seeks to bring in this action.

# IV.

## CONCLUSION AND ORDER

Plaintiff's complaint states a cognizable claim for retaliation in violation of the First Amendment against John Peterson. Plaintiff has not sufficiently alleged facts to state any other cognizable claims or claims against any other defendant. The Court will provide Plaintiff with the opportunity to file an amended complaint to cure the deficiencies identified by the Court in this order. <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only against the claim outlined above, Plaintiff may so notify the Court in writing, and the Court will recommend to a district judge that the other defendants and claims be dismissed for the reasons explained above. Thereafter, the Court will forward Plaintiff one (1) summons and one (1) USM-285 form for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988).

Although Plaintiff's factual allegations will be accepted as true and "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

Plaintiff is advised that an amended complaint supersedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1. Within thirty (30) days from the date of service of this order, Plaintiff must either:

   a. File an amended complaint **not to exceed 20 pages in length, double spaced using size 12 Times New Roman or similar font**, curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against John Peterson on the First Amendment retaliation claim, and

2. If Plaintiff fails to comply with this order, the Court will recommend to a district judge that the action be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated: __April 16, 2018__

_____
UNITED STATES MAGISTRATE JUDGE