Taylor Gamino
822 7th Street
Ripon CA 95366
209-822-9282

Plaintiff, in Pro Per



FILED

JUN 21 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR GAMINO,<br><br>    Plaintiff,<br><br>vs.<br><br>YOSEMITE COMMUNITY COLLEGE DISTRICT; MODESTO JUNIOR COLLEGE, ELDA BAUTISTA; JOHN PETERSON; BANUELOS; in their official and individual capacities,<br><br>    Defendants. | Case No.: 1:18-CV-00391-LJO-SAB<br><br>JURY TRIAL DEMANDED<br><br>FIRST AMENDED COMPLAINT |

## COMPLAINT

I, Plaintiff TAYLOR GAMINO, for my complaint against YOSEMITE COMMUNITY COLLEGE DISTRICT (referred to as YCCD); MODESTO JUNIOR COLLEGE (referred to as MJC); ELDA BAUTISTA, JOHN PETERSON, and BANUELOS, in their official and individual capacities, states as follows:

## PARTIES

Plaintiff:  Taylor Gamino
            822 7th Street
            Ripon, San Joaquin County
            California, 95366
            (209) 822-9282

Defendant No. 1:

    Yosemite Community College District

    2201 Blue Gum Ave.

    Modesto, Stanislaus County

    California, 95358

    (209) 822-9282

Defendant No. 2:

    Modesto Junior College

    435 College Ave

    Modesto, Stanislaus County

    California, 95350

    (209) 575-6550

Defendant No. 3:

    Elda Bautista

    Professor – Math

    2201 Blue Gum Ave.

    Modesto, Stanislaus County

    California, 95358

    (209) 575-7900

Defendant No. 4:

    John Peterson

    Professor – Automotive Technology

    2201 Blue Gum Ave

    Modesto, Stanislaus County

    California, 95358

    (209) 575-6325

Defendant No. 5:    BANUELOS

    Formerly Dean of Enrollment Services, Special Programs & Student Learning (at YCCD/MJC through August 2017)

    Currently Executive Vice President at West Hills College, Coalinga, California

    300 West Cherry Lane

    Coalinga, CA 93210

    (559) 934-2000

## INTRODUCTION

1. This is an action for monetary damages, and declaratory and injunctive relief, brought pursuant to: Civil Rights Act of 1964, 42 U.S.C. Section 1983 for retaliation for engaging in protected conduct of reporting violations of federally protected rights, the Americans with Disabilities Act of 1990 ("ADA") the Rehabilitation Act of 1973 ("RA"), including but not limited to, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C 794d and accompanying

regulations related to students in postsecondary education; and First Amendment Right under the United States Constitution to freedom from retaliation for exercising freedom of speech to report violations of federally protected rights, a protected activity.

2. Plaintiff was born with hypo plastic right heart syndrome and suffered a stroke which resulted in several chronic disabilities, all of which affect several major life activities such as breathing, writing, walking, learning, thinking, concentrating, alleged in more detail below, in existence during all times alleged in this complaint, and is a qualified individual with a disability under the ADA and RA, and YCCD/MJC, receives federal financial assistance for the classes and their DSPS. Plaintiff alleges that at the time of the acts and omissions alleged below, defendants BAUTISTA and PETERSON, were both employed by YCCD, as adjunct instructors for MJC, and both knew Plaintiff had a verified disabilities (verified by YCCD's Disabled Student Programs & Services ("DSPS") office, and was entitled to the accommodations in the "Academic Accommodations Plan – Abbreviated Education Plan" prepared by YCCD's DSPS office, a copy of which was provided to both BAUTISTA and PETERSON at the beginning of the semester when Plaintiff met with each separately, in private, prior to the acts and omissions stated below. During class in the presence of other students BAUTISTA asked Plaintiff when he took the test (the most recent test at the time) to which Plaintiff responded, "I took it at ten o-clock." BAUTISTA then proceeded to bring up Plaintiff's confidential testing accommodations in the middle of class, while standing at plaintiff's desk, in the presence of, and within hearing of other students, and stating out loud that this was unfair to the other students, humiliating and embarrassing Plaintiff. Plaintiff had not made any other statements to BAUTISTA at that time, other than to give the time the test was taken in response to her direct question, and did not bring up his DSPS status or accommodations. (Plaintiff had been taking all tests and quizzes up to that

point, для over half the semester, in accordance with the agreement he and BAUTISTA agreed plaintiff could take the test prior to the commencement of the next class.) BAUTISTA further stated that Plaintiff would be required to take tests before the rest of the class. Plaintiff wrote an email to ELDA BAUTISTA the following day on March 23, 2016, in which he first responded to BAUTISTA's March 22, 2016 statements in class about his exercising his approved DSPS accommodations (on a date she previously had agreed to) being unfair, that he copied to the dean and president of MJC to make them aware of the breach of his privacy, and denial of equal benefit due to the testing accommodation being only afforded at the DSPS testing center, which closed at 5:00pm, during Plaintiff's night class.. He explained how requiring him to take the test before the rest of the class deprived him of six hours of study time that the other students without learning disabilities had, or alternatively be forced to forgo his DSPS testing accommodations altogether. With less time to prepare for exams and quizzes, Plaintiff's grades in her class began to decline, all of which is alleged more fully below.

3. PETERSON, knew from discussions with plaintiff at the beginning of the semester that plaintiff was a verified disabled DSPS student with approved accommodations from the DSPS office. A couple weeks into the semester, PETERSON decided to have a test on the evening of September 14, 2016, did not allow plaintiff to exercise his accommodations to take the test at the DSPS testing center, intimidating plaintiff into taking the test in class, despite being aware of Plaintiff's verified disability and DSPS Accommodations that had been provided to him by Plaintiff. Plaintiff quietly asserted his constitutional rights as a student with verified disabilities and approved accommodations that Plaintiff had discussed with PETERSON previously in private, and discreetly reminded PETERSON of his DSPS testing accommodation (plaintiff was seated at the front of the class, close to PETERSON, and spoke in a voice soft

enough so other students would not hear). PETERSON instead responded in a loud voice that other students could easily hear, ". . . ."What is wrong with you? What is your disability?" Humiliating and embarrassing plaintiff and asking plaintiff to divulge private information that pursuant to the law, and DSPS' own policies and procedures, is not supposed to be discussed by faculty or staff in the presence of other students, faculty or staff.

4. After Plaintiff exercised his constitutionally protected right and reported PETERSON's conduct that violated his rights as a student with verified disabilities affecting one or more major life activities to Plaintiff's DSPS counselor, and an email was sent to PETERSON, PETERSON retaliated against Plaintiff on September 21, 2016 by pulling up the confidential email on an overhead projector during class, with other students present, referring multiple times to plaintiff directly, in retaliation for plaintiff exercising his constitutionally protected speech, in an effort to punish and chill plaintiff from exercising his First Amendment right to report any violations in the future, as alleged in more detail below.

5. Plaintiff alleges that the constitutional violations of his rights by BAUTISTA and PETERSON, were done under color of law, and committed as a result of policies and customs of YCCD and MJC. Dean Pedro Mendez, like DSPS counselor Claudia Puebla intentionally discouraged plaintiff from putting his complaint in writing, and Pedro Mendez further attempted to conceal from plaintiff the Discrimination Complaint form, attempting to chill plaintiff's exercise of his First Amendment right to free speech to engage in a protected activity to report conduct that violated his rights as a student with verified disabilities and approved DSPS accommodations.

6. Defendant BANUELOS, after plaintiff exercised his First Amendment

right to report the violations to the Office of Civil Rights (OCR), and after OCR closed their case to allow YCCD and MJC to do an investigation, retaliated against Plaintiff for having engaged in the constitutionally protected activity of reporting constitutional violation of his rights as a student with verified disabilities, by throwing a piece of paper, stating in a raised and intimidating voice to plaintiff and his mother, 'Well you're the one who went to OCR first!" which was incorrect (Plaintiff reported it to the deans and DSPS counselor first, filed an internal complaint with MJC), making Plaintiff feel intimidated, and reprimanded for engaging in a protected activity, of reporting violations to OCR, attempting to chill plaintiff from further exercising his right to engage in a protected activity and failed to extend to plaintiff his appeal rights.

7. Plaintiff alleges that these constitutional violations by BAUTISTA, JOHN PETERSON, and BANUELOS, committed under color of law, were committed as a result of the policies and customs of YCCD and MJC, and YCCD, is liable for the acts committed by defendants, BAUTISTA, PETERSON, AND BANUELOS, in their official capacities.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1343 over Plaintiff's causes of action arising under the Constitution of the United States, Civil Rights Act of 1964, 42 U.S.C. 1983, all-encompassing statutory sections of the ADA, including but not limited to, Title II, Title III, Title IV; all-encompassing statutory sections of the RA, including but not limited to, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C 794d and accompanying regulations related to students in postsecondary education; First Amendment Right under the United States Constitution to freedom of speech and freedom from retaliation for exercising freedom of speech to report violations of federally protected rights, and pursuant to the Declaratory Judgment Act, 28 U.S.C. Sections 2201 and 2202. This Court has supplemental

jurisdiction over plaintiff's causes of action arising under the California state law pursuant to 28 U.S.C. Sec. 1367, for which plaintiff currently has a motion pending in the Superior Court, County of Stanislaus for permission to file. Plaintiff will seek leave to amend this complaint to allege these additional California state law causes of action once permission to file has been obtained.

9. Venue lies in the United States District Court for the Eastern District of California because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Stanislaus County, California. 28 U.S.C. Sec. 1391(b)(2).

10. Divisional venue is in the Fresno Division because the events leading to claim for relief arise out of Stanislaus County.

## PARTIES

11. Plaintiff, TAYLOR GAMINO, is an adult citizen and resident of the City of Ripon, California, County of San Joaquin.

12. Defendant BAUTISTA, is a math instructor at MJC, operated by defendant YCCD in Stanislaus County, California, sued in her individual and official capacity.

13. Defendant JOHN PERTSON, is an automotive mechanics instructor at MJC operated by defendant YCCD in Stanislaus County, California. He is sued in his individual and official capacity.

14. Defendant BANUELOS, at all times mentioned in this Complaint, was

the Dean at MJC, operated by defendant YCCD in Stanislaus County, California. He is sued in his individual and official capacity.

15. Defendant YCCD operates MJC, and both are located in Modesto, Stanislaus County, California.

## BACKGROUND

16. I, TAYLOR GAMINO, was born with hypo plastic right heart syndrome, and suffered a stroke causing several chronic disabilities, all of which affect several major life activities, and were in existence during all times alleged in this complaint. Because my heart has an underdeveloped right side affecting the pump, that pumps blood to my lungs, I sometimes turn blue due to the lack of oxygen circulating through my body. Although I have a pump in my heart that's doing the work two pumps should be doing, circulating blood to my body and to my lungs, I experience frequent occasion of blurred vision, dizziness, and light headedness, substantially impacting several major life activities. The stroke affected my use of my right arm and hand (I am right-handed), and I have motor deficiencies interfering with my ability to take notes and write during tests and quizzes. Part of my brain is still shadowed due to my stroke. I cannot read my own handwriting and was provided a note taker in class due to that disability. Due to the stroke and the additional lack of oxygen to my brain, my body tires easily, and often. As a result I also have difficulty processing information and difficulty with concentration, thinking, reading, writing, remembering instructions, retaining information, which requires me to work significantly harder to try to keep up with the learning levels of my peers. Due to 4 open heart surgeries requiring my chest to be opened up each time, I experience much discomfort while sitting for long periods of time. I cannot walk for long periods of time due to shortness of breath, having

chest pains or both. I am limited to lift no more than 5 lbs. due to the extra pressure lifting heavier weight would create on the blood flow through my heart and can cause additional stress on my body. I still have heart disease, and live with disabilities from my stroke.

17. Due to my disabilities, I had qualified for: an Individual Education Plan ("IEP") (that followed through into my college years), Social Security Disability, a Handicap Parking placard, and my disabilities were "verified" by counselors/evaluators of defendant YCCD's DSPS, located in Stanislaus County, California, who determined as follows: "this student [referring to Plaintiff] has a verified disability and is granted the following accommodations. This determination is made in compliance with Section 504 of the Rehabilitation Act of 1973 and the Americans with Disability Act (ADA) of 1993." DSPS determined that I have one or more disabilities that affected a major life activity including "learning," as well as disabilities with "writing," for which I qualified to have an accommodation for taking notes (NCR paper to create a copy of another student's notes), and be allowed to record lectures, "sitting" that qualified me to have an accommodation that I be allowed to stand in class, that due to fatigue and lack of oxygen to the brain, I be able to take breaks as needed, that I am permitted time and a half to take tests and quizzes due to the effect of my disabilities on learning, concentration, and thinking, and that I take tests at the DSPS testing center in order to exercise my accommodations (which was required by DSPS in order to exercise testing accommodations. Based on my prior IEP, evaluations, and medical documentation, DSPS determined that I was disabled as defined by ADA and Section 504 of the RA, and was a qualified student for services and accommodations for my disabilities with defendant YCCD and MJC, and at all times was a participant in the Disabled Student Programs & Services ("DSPS") with approved accommodations for my disabilities, which is relevant to all of the incidents, and acts and omissions described below.

18. **Incident with instructor BAUTISTA:** I attended class with BAUTISTA on the evening of March 22, 2016 (ten weeks into a sixteen-week semester). I had taken a test in the DSPS Testing Center at 10:00am that morning pursuant to my approved NAS accommodations, and the agreed upon testing arrangement I had reached with BAUTISTA in private at the beginning of the semester for her math tests/quizzes, in which she had agreed that as long as my test was in before the next class commenced, it would be graded equally with the others. I had previously taken several tests/quizzes for her class in the DSPS Testing Center prior to March 22, 2016, just as I had done the morning of March 22, 2016.

19. While I was seated at my desk and other students were seated in desks around me, BAUTISTA walked up to my desk and started asking me about when I had taken the test, claiming she had not received my test. The only thing I said in response was "ten o'cloack," because I was so embarrassed and humiliated that this was being brought up in front of other students. I did not respond in other way, to anything further that she said about my personal confidential DSPS information, nor did I bring up my status as a DSPS student or my DSPS accommodations. BAUTISTA stated in front of the other students, loud enough for them to easily hear, that my taking the test that morning (which was my approved accommodation) was unfair to the other students, and that I would need to start taking the test before the rest of the class does (despite my agreement with BAUTISTA since the beginning of the semester). I felt embarrassed and humiliated. Other than stating "I took it at ten o'clock," I had not responded directly to BAUTISTA in response to her statements about my confidential arrangements, and did not in any manner open up the conversation for discussion.

20. Instead, in an email I wrote to BAUTISTA on March 23, 2016, and copied it to

others, including the dean, Derek Waring (counselor), and Jill Stearns (President of MJC), I expressed my grief over what she had said in class in front of other students, and explained that taking the test six hours earlier than the rest of the class, as BAUTISTA was suddenly now insisting, almost two-thirds into the semester, since the DSPS Center was not open and accessible for night class students with disabilities, and no other alternative was offered for me, put me, as a DSPS student, at a disadvantage. With six hours less time to study than other students without disabilities, I was not treated equally, nor afforded the same benefits as students without disabilities in my class, and my grades in her class declined as a result. I also suffered humiliation, embarrassment, anxiety, contributing to my anxiety to take any more class-based courses, and delaying my ability to earn an income in my chosen career. Other than a March 24, 2016, email from Laura Maki, Interim Dean Science, Math & Engineering (who was not anyone copied by me on the email), that simply said: "We just want to let you know that we received your correspondence, understand your concerns, and will look into this issue." I did not receive any further response to my complaint regarding this incident with BAUTISTA, in violation of YCCD's own stated policies and procedures, until over 15 months later, after I experienced a subsequent incident involving another instructor, demonstrating YCCD's disregard for violations of the rights of students with disabilities. I was not seeking to be given private personnel information, but simply whether any policies, procedures, or customs were changed to ensure that instructors understood their obligations with regard to students with verified disabilities, so that hopefully this would not occur again in any YCCD class.

21. **Incidents with PETERSON:** Less than six months after the BAUTISTA incident, I began attending class with PETERSON on August 29, 2016, a night class held at the Auto Shop at Turlock High School, in Turlock, California, Stanislaus County. I met with PETERSON

privately at the beginning of the semester and informed him that I was a DSPS student and of my NAS accommodations, which included among other things, testing accommodations (time and a half and to take test at DSPS testing center). I provided him with my approved NAS accommodations in effect during the previous semester, explained my need to take tests/quizzes at the DSPS Testing Center, and record lectures per my accommodations, and he said that was fine. My accommodations have remained the same, but the DSPS counselor was routinely unavailable to update the NAS form until later in the semester, and it was updated on 9/19/16.

22. The conduct of PETERSON towards me throughout the semester demonstrated his ill will towards me, and his intention to demean, humiliate, and disregard my rights as a DSPS student. I was frequently used by PETERSON as an example to start lessons off, which often resulted in him humiliating and embarrassing me, to make me look stupid. I asked the professor privately after class if I could bring in a part I had purchased, and he said to bring it in. The next class session he took the item I brought, we walked out to my car with it, and with students gathered around my car, PETERSON proceeded to yank aggressively at my bumper, tugging it hard to which I became quite alarmed. He then said in front of everyone that my bumper was terrible and that it was loose. I remembered I took the bumper off earlier and he replied, "well there's your problem," embarrassing me in front of the class. He again said that my bumper was too loose for the part I wanted to install and then kicked my bumper. Another student commented to me "wow, Professor Peterson really doesn't like you."

23. When PETERSON did pairing with other students for working on engines, he paired me with two students that rarely attended. When they did attend, one student smelled heavily of marijuana that was distracting, and offensive, and the other student arrive unprepared,

without even a writing utensil or paper. Another time, before handing out tests back, PETERSON was talking about the dumb answers he received and read some from the tests in his hand, and then started handing them out with my name being one of the first he called, making it obvious that mine was the test he had just read from, as an example of "dumb answers."

24. On September 14, 2016, when PETERSON decided that we were going to take a test that same evening, I very quietly tried to remind him that "I couldn't take the test that day because my accommodations say that I have to take it at the DSPS testing center." This was a night class YCCD/MJC held at Turlock High School, so the testing center located twenty minutes away, was already closed at 5:00pm. I was sitting in the front of the classroom near the professor's desk so I was being discreet, and quiet enough for others not to overhear. PETERSON then proceeded to announce in a loud enough manner for other students to hear, "I don't think you understand how easy this test is" to which I replied, "it doesn't matter how easy it is, I have to take my tests at the testing center." PETERSON asked me, "What's wrong with you?" "What's your disability?" Again loud enough for other students in the class to hear, and in a tone that at this point was intimidating, and he was visibly frustrated. I felt very intimidated by Professor Peterson, who is a large man, and felt forced to answer his question that he asked me in front of the classroom. I felt intimidated into taking the test at that time, being denied my right to my testing accommodations, I received approximately an 85, when with my accommodation of time and a half, and less distraction, I believe I would have done better, and was distracted by the violation of my right to privacy and confidentiality regarding my disabilities.

25. After this happened I immediately the next day made a call to the DSPS center and asked for help. The first appointment was September 19, 2016. I asked Claudia Puebla, a DSPS counselor, about my rights as a DSPS student. Claudia Puebla gave me zero information about

my rights to help me advocate for myself, nor any information on the rights that pertained to the conduct I reported about PETERSON, even though I specifically asked what rights were involved so that I was prepared to assert those rights with PETERSON, or any other instructor, given that a similar incident had previously occurred less than six months earlier with BAUTISTA. My mother and I had to push for Claudia Puebla to even send Professor Peterson an email about what happened. Claudia Puebla wanted to "wait and see if this happens again..."

26. On September 21, 2016, when I sat for attendance call, at the end of taking attendance PETERSON called my name again, and I replied again that I was here, and he said "yes, I know you're here" and proceeded to tell the class he received an email and wanted to review it. PETERSON then displayed on a projector in class in front of the entire class in attendance, an email he had received from Claudia Puebla. I sat quietly, deeply humiliated once again and in immense disbelief of PETERSON's actions. He then proceeded to read through the email, out loud, to the entire class. As PETERSON continued to talk about the email he had projected up on the screen, I overheard a student saying to another student, "Don't look, we shouldn't be seeing this!" While reading through it he asked me questions like "do you understand?" "do we need to have a talk outside?" and at the end he asked if I understood it, I nodded my head, and he said "If you understand it, then we all understand it" This exchange was audio recorded as I do have the right to record in the classroom and I also took photographs of the email displayed via projector screen.

27. I reported PETERSON's September 21, 2016 conduct to Claudia Puebla who directed me this time to dean, Pedro Mendez. Although I specifically asked him for the correct form to file a discrimination complaint against PETERSON, Pedro Mendez discouraged me from exercising my first amendment right to report in a formal complaint the retaliation against me by

PETERSON, a constitutionally protected activity, reporting PETERSON's denial of my accommodations and violation of my rights as a DSPS student with verified disabilities. He also did not show us the discrimination complaint form that he had on his computer, nor did he print it out, but instead said he would handle the complaint with the proper channels and that we only needed to make an official complaint if we decided later. Eleven months later, I was informed by Lloyd Jackson, the YCCD Title IX/Civil Rights Compliance Coordinator, that because I did not initially put my complaint in writing on their complaint form in September, as I sought to do, only an informal investigation was conducted.

28. **Incident involving BANUELOS**: Having heard nothing further from Pedro Mendez, I filed a formal written complaint form with MJC and a formal complaint with the Office of Civil Rights. I was then contacted by the secretary for Dean BANUELOS to set up a meeting with him. At the second meeting with dean BANUELOS, he was extremely upset and in a raised voice said to my mother and I, "Well you're the one who filed with OCR first," which was not the case. I felt reprimanded by BANUELOS for exercising my First Amendment right to report violation of my civil rights, and retaliation, to the Office of Civil Rights, and he was clearly upset that I had done so, even crumpling up and throwing a piece of paper. I felt I was being intimidated from pursuing anything further with OCR. I just wanted to know that steps had been taken by YCCD and MJC to make sure instructors understood their obligations to DSPS students so hopefully this wouldn't happen again. Instead I was informed nothing had been changed.

29. As a direct and proximate result of the acts of defendants, I suffered the following injuries and damages:

a. Violation of my constitutional rights under all-encompassing statutory sections of the Americans with Disabilities Act of 1990, all-encompassing statutory sections of the

Rehabilitation Act of 1973, including section 504 of the Rehabilitation Act of 1973, 29 U.S.D. Section 794d and accompanying regulations related to students in postsecondary education;

b. Retaliation for exercising my First Amendment Right to report violations of my rights as a student with verified disabilities, as explained above, and intimidation to not exercise my First Amend right in the future;

c. Denial of my approved accommodation for my verified disabilities, which denied me the equal benefits available to other students without disabilities, including less study time for BAUTISTA's tests/quizzes than afforded other students without disabilities or be forced to forgo my accommodations, less time to complete tests than my testing accommodation allowed, and violation of my right to privacy by instructors bringing up my accommodations and disability during class with other students present.;

d. Severe emotional distress including humiliation, embarrassment, anxiety, depression, suicidal thoughts, exacerbation of my existing medical condition, including, but not limited to, raised blood pressure, TMJ from stress, delay in my education, and delay in earning an income in my chosen career.

30. At all relevant times, defendants BAUTISTA, PETERSON, and BANUELOS, were acting under color of law and under color of authority as YCCD/MJC instructors/or deans, employees, and agents or servants of YCCD/MJC, in their official capacity.

## COUNT I
**Violation of Civil Rights Act of 1964 (42 U.S.C. Section 1983) First Amendment Retaliation Defendants BAUTISTA, PETERSON, and BANUELOS in their individual capacity**

31. Plaintiff re-alleges and incorporates by reference paragraphs 1-30.

32. Plaintiff claims damages under 42 U.S.C. Section 1983 for the injuries set forth above against defendants BAUTISTA, PETERSON, and BANUELOS in their official and individual capacity, for violation and retaliation for exercising his First Amendment right to report violation of his rights, a protected activity, under color of law. BAUTISTA, PETERSON and BANUELOS were each aware of plaintiff's status as a verified disabled DSPS student with approved accommodations, blatantly and with reckless disregard for plaintiff's rights, knowing that their conduct would foreseeably violate plaintiff's right to privacy regarding his disabilities and corresponding accommodations, violated plaintiff's rights to exercise his accommodations, humiliated and embarrassed plaintiff, and further retaliated against plaintiff for exercising his approved and agreed upon accommodations which deprived him of the benefit afforded other students without disabilities, with the intent to intimidate and chill plaintiff from further exercising his first amendment right to engage in a protected activity of asserting his rights to accommodations and reporting violations of his rights, causing severe emotional distress. Plaintiff engaging in the protected activities alleged above and herein, was a substantial and motivating factor for the conduct of defendants, BAUTISTA, PETERSON, and BANUELOS.

## Count II

**Violation Of All-Encompassing Statutory Sections of the ADA, and RA, Including Section 504 of the RA, 29 U.S.C. Section 794d And Accompanying Regulations Related To Students In Postsecondary Education**

**Against Defendants YCCD and MJC**

33. Plaintiff re-alleges and incorporates by reference paragraphs 1-32.

34. Plaintiff seeks an order declaring the conduct of Defendants, BAUTISTA, PETERSON, and BANUELOS unconstitutional and that YCCD violated the all-encompassing sections of the ADA and RA;

35. Plaintiff seeks injunctive relief to require better training of instructors and administrators regarding the legal rights of students with disabilities and their legal obligations under the applicable laws, as laid out in the email by Claudia Puebla, after my mother and I had to insist that some written communication be sent to PETERSON regarding his conduct on September 14, 2016 and September 21, 2016.

### Count III
### Violation of Civil Rights Act of 1964 (42 U.S.C. Section 1983) Interference with First Amendment Rights
### Against Defendant YCCD

36. Plaintiff re-alleges and incorporates by reference paragraphs 1-35.

37. Prior to March 22, 2016 and September 21, 2016, YCCD/MJC developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons with disabilities at YCCD/MJC in Stanislaus County, which caused the violation of plaintiff's rights.

38. It was the policy and custom of YCCD /MJC to fail to exercise reasonable care in hiring its instructors, including BAUTISTA and PETERSON, thereby failing to adequately prevent constitutional violations on the part of its instructors. It was the policy and practice of YCCD and its administrators, faculty and staff, to discourage students from exercising their constitutional right to put their complaint of a violation of constitutional rights in writing, and from reporting such violations to OCR. Claudia Puebla did not want to write to PETERSON. Dean Pedro Mendez discouraged plaintiff from putting his complaints in writing saying to let Dean Mendez handle it internally. BANUELOS loudly and sternly scolded plaintiff and his mother falsely accusing them of going to OCR first, with the intent to chill exercise of the right.

39. It was the policy and/or custom of YCCD/MJC to inadequately supervise and train it's instructors and administrators, including defendants BAUTISTA, PETERSON, Pedro Mendez, and BANUELOS, thereby failing to adequately discourage further constitutional violations on the part of their instructors and administrators.

40. As a result of the above described policies and customs, instructors and administrators of YCCD/MJC, including defendants BAUTISTA, PETERSON, and BANUELOS, believed their actions would not be properly monitored by supervisory faculty, staff and administrators, and that misconduct would not be investigated or sanctioned, but would be tolerated.

41. The above described policies and customs demonstrate a deliberate indifference on the part of YCCD to the constitutional rights of students with verified disabilities at MJC, and were the cause of the violation of my rights alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

- A. Enter judgment in favor of Plaintiff and against Defendants;
- B. Enter an order declaring the conduct of Defendants, BAUTISTA, PETERSON, and BANUELOS unconstitutional;
- C. Award Plaintiff compensatory damages against Defendants BAUTISTA, PETERSON and BANUELOS for claims under 42 USC Section 1983;
- D. Award Plaintiff punitive damages against the individual defendants, BAUTISTA, PETERSON, and BANUELOS for retaliation;

E. Enter a permanent injunction, upon proper motion, requiring defendant YCCD to adopt appropriate policies related to supervision of its instructors and administrators regarding complying with rights of students with disabilities to privacy, freedom from retaliation for exercising rights to DSPS accommodations or reporting violations of rights;

F. Award reasonable attorney's fees, and costs pursuant to 42 U.S.C. Section 1988 and any other applicable provision of law;

G. Grant to Plaintiff such other and further relief as may be just and proper under the circumstances, including but not limited to, appropriate injunctive relief.

## JURY DEMANDED

Plaintiff demands a jury trial, under the Constitution of the United States, as to all claims for damages.

### Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: June 21, 2018.

Signature of Plaintiff _____

Printed Name of Plaintiff  Taylor Gamino