# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| TAYLOR GAMINO, | Case No. 1:18-cv-00391-LJO-SAB |
|---|---|
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS AND DEFENDANTS |
| v. | |
| YOSEMITE COMMUNITY COLLEGE DISTRICT, et al., | (ECF No. 9) |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff Taylor Gamino filed this civil rights action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and section 504 of the Rehabilitation Act ("RA"). Plaintiff's complaint was screened and on April 17, 2018, an order issued requiring Plaintiff to either file an amended complaint or notify the Court that he was willing to proceed on the claims found to be cognizable in the screening order. On June 21, 2018, Plaintiff filed a first amended complaint. (ECF No. 9.)

**I.**

**SCREENING REQUIREMENT**

Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such

relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of in forma pauperis proceedings which seek monetary relief from immune defendants); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss in forma pauperis complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim). The Court exercises its discretion to screen the plaintiff's complaint in this action to determine if it "i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the pro se complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. at 678 (quoting Twombly, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff brings this action against the Yosemite Community College District ("YCCD"),

Modesto Junior College ("MJC"), Elda Bautista, John Peterson, and former Dean Banuelos, in their individual and official capacities, alleging violations of the ADA, RA, and retaliation in violation of the First Amendment. Plaintiff is seeking declaratory and injunctive relief, and monetary damages.

Plaintiff was born with hypo plastic right heart syndrome and suffered a stroke which resulted in several chronic disabilities. (First Am. Compl. ("FAC") 4, 8,[1] ECF No. 9.) Plaintiff is a student at MJC and has an Academic Accommodations Plan. (Id.) Plaintiff receives a note taker in class, can record lectures, is allowed to stand in class, can take breaks as needed, is permitted time and a half to take tests and quizzes, and takes tests at the testing center. (Id. at 8-9.) Plaintiff's accommodation plan was provided to his instructors, Defendants Bautista and Peterson, who are adjunct professors at MJC. (Id. at 4.)

During class on the evening of March 22, 2016, Defendant Bautista asked Plaintiff when he had taken the most recent test. (Id. at 4, 10.) When Plaintiff responded, Defendant Bautista brought up his confidential testing accommodations in front of the class and told Plaintiff that it was unfair to the other students for him to take the test after the other students. (Id. at 4, 10.) Defendant Bautista told Plaintiff that he would be required to take the test on the same day as the other students. (Id. at 4, 10.) Plaintiff wrote an e-mail to Defendant Bautista the next day complaining about the breach of his privacy and that he was being required to take the test before the other students because the testing facility closed at 5:00 p.m., prior to his night class. (Id. at 4, 10-11.) Plaintiff asserted that he was being required to be deprived of six hours of study time that the other students were receiving or to forego his testing accommodations. (Id. at 4.) The e-mail was copied to the dean and the president of MJC. (Id.) Because Plaintiff had to take the tests the day they were given to the rest of the class, his grades began to decline. (Id.)

Plaintiff received an e-mail on March 24, 2016, from Laura Maki, Interim Dean of Science, Math, and Engineering that his correspondence had been received and she would look into the issue. (Id. at 11.) It was over 15 months before Plaintiff received a further response on the issue.

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

(Id.)

Plaintiff was taking an auto shop class in the evening at Turlock High School and Defendant Peterson was the instructor. (Id.) Plaintiff felt like Defendant Peterson frequently used him as an example to make him look stupid and humiliate him. (Id. at 12-13.) Defendant Peterson gave the class a test the evening of September 14, 2016. (Id. at 4, 13.) Plaintiff discretely asserted that he had an accommodation in front of the class and could not take the test because the testing center was not open. (Id. at 4-5, 13.) Defendant Peterson told Plaintiff that he did not understand how easy the test was and asked Plaintiff what his disability was loud enough for the class to hear. (Id. at 4-5, 13.) Plaintiff took the test and received an 85 but would have scored better had he been allowed to take the test at the testing center. (Id. at 13.)

Plaintiff reported Defendant Peterson's comment to his disability counselor on September 19, 2016. (Id. at 4, 13.) Plaintiff asked the counselor, Claudia Puebla, about his rights as a disabled student. (Id. at 13.) She gave him no information about his rights. (Id.) Plaintiff and his mother had to push Ms. Puebla to send an e-mail to the instructor about the incident because she wanted to wait and see if it happened again. (Id. at 14.)

On September 21, 2016, Defendant Peterson retaliated against Plaintiff by pulling up the confidential e-mail that was sent by Ms. Puebla. (Id. at 4, 14.) Defendant Peterson put the e-mail on an overhead projector in front of other students and referred directly to Plaintiff multiple times. (Id. 4, 14.) Plaintiff reported this incident to Ms. Puebla and was directed to Dean Mendez. (Id. at 14.)

Plaintiff asked Dean Mendez for a complaint form to file a complaint against Defendant Peterson. (Id. at 14.) Dean Mendez attempted to discourage Plaintiff from filing a formal complaint and did not show Plaintiff the complaint form that he had on his computer or print it out for Plaintiff. (Id. 14-15.) Dean Mendez told Plaintiff that he would handle the complaint through the proper channels and that Plaintiff and his mother could decide to file a formal complaint later. (Id. at 15.) Because Plaintiff did not put the complaint in writing only an informal investigation was conducted. (Id.)

Plaintiff filed a formal complaint with MJC and the Office of Civil Rights. (Id.) Plaintiff

had meetings with Dean Banuelos. (Id.) At the second meeting, Dean Banuelos was extremely upset and told Plaintiff that he was the one who had filed the Office of Civil Rights claim first in a raised voice. (Id.) Dean Banuelos even crumpled up a piece of paper and threw it. (Id.)

## III.

## DISCUSSION

### A. Retaliation in Violation of the First Amendment

Plaintiff brings his first cause of action for retaliation in violation of the First Amendment against Defendants Bautista, Peterson, and Banuelos in their individual capacities.[2]

To state a retaliation claim under the First Amendment, Plaintiff must allege "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016).

Plaintiff alleges that after he complained about Defendant Peterson's conduct, Defendant Peterson showed the e-mail sent in response to the class and directed comments to Plaintiff to embarrass him. This is sufficient to state a retaliation claim against Defendant Peterson.

Plaintiff alleges that Defendant Bautista told him that it was unfair for him to take the tests a day later than the other students and that he complained. However, Plaintiff's complaint is devoid of any conduct by Defendant Bautista in response to his complaint. Plaintiff alleges that because he was required to take the class on the same day as the rest of the class his grades declined, but the decision to have him take the test on the same day as the other students was the conduct complained of and there are no factual allegations in the complaint by which it could be reasonably inferred that Defendant Bautista required Plaintiff to take tests on the same day as the other students due to Plaintiff's protected activity. Plaintiff fails to state a cognizable claim for retaliation against Defendant Bautista.

---

[2] Plaintiff also alleges that the claims are against the defendants in their official capacities. However, there are no allegations that the actions taken were pursuant to a custom or policy and therefore, Plaintiff has not stated an official capacity claim. Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991); McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986).

Plaintiff alleges that during his second meeting with Defendant Banuelos, the defendant got frustrated with him, raised his voice, and crumpled up and threw a piece of paper because Plaintiff had filed a complaint. To state a claim, Plaintiff must allege actions by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity. Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir.1999). While the allegations here may show that Defendant Banuelos was experiencing frustration that is in some context related to Plaintiff filing his complaint, without more, the allegation that Defendant Bautista raised his voice and crumpled up and threw a piece of paper are not the types of actions that would chill a person of ordinary firmness from continuing to engage in the protected activity. See Fogle v. Infante, No. 14-CV-01021-BNB, 2014 WL 11878136, at *2 (D. Colo. May 14, 2014) (refusing to provide grievance form not sufficient to chill ordinary person); Johnson v. Zavala, No. C 07-5578 SBA (PR), 2009 WL 2870981, at *3 (N.D. Cal. Sept. 1, 2009) (altering inmate's schedule insufficient); Knotts v. Oregon Trail School District 46, No.3:15-cv-02296-AC, 2017 WL 4861520, *7 (D. Or. Oct. 6, 2017) (security staff directing student to leave football game sufficient); Barich v. City of Cotati, No. 15-CV-00350-VC, 2015 WL 6157488, at *2 (N.D. Cal. Oct. 20, 2015) (threatening arrest sufficient). Plaintiff has failed to state a retaliation claim against Defendant Banuelos.

**B.  Americans with Disabilities Act and Rehabilitation Act**

Plaintiff brings his second cause of action for violation of the ADA[3] and RA against Defendants YCCD and MJC.

Title II of the Americans with Disabilities Act ("ADA") and section 504 of the Rehabilitation Act prohibit discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."

---

[3] Plaintiff alleges violations of Titles II, III, and IV of the ADA. Title II and Title III of the ADA are "parallel provisions" with Title II covering only public entitles and Title III covering only private entities. Hernandez v. Cty. of Monterey, 70 F.Supp.3d 963, 973 (N.D. Cal. 2014). Plaintiff brings his claims here against a community college and the community college district which are both public entities. 42 U.S.C. § 12131(1); compare 42 U.S.C. § 12181. Therefore, Plaintiff's claims in this action arise under Title II and not Title II of the Act. Title IV of the ADA applies to telecommunications. Parr v. L & L Drive-Inn Rest., 96 F.Supp.2d 1065, 1070 (D. Haw. 2000). Only Title II applies to Plaintiff's claims in this action.

42 U.S.C. § 12132. Similarly, the Rehabilitative Act ("RA") provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052; accord Martin v. California Dept. of Veterans Affairs, 560 F.3d 1042, 1047 (9th Cir. 2009). "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Lovell, 303 F.3d at 1052. As there is no significant difference in the analysis of rights and obligations under the two Acts, Miller v. Monroe Sch. Dist., 159 F.Supp.3d 1238, 1249 (W.D. Wash. 2016), the Court analyzes the claims together.

Plaintiff has alleged that he is a qualified individual with a disability. Plaintiff does not allege that he was denied an academic accommodation plan but alleges that Defendant Bautista discriminated against him by requiring him to take tests the same day as other students within the plan and that Defendant Peterson violated the plan by requiring him to take the quiz on September 21, 2016. The only actual denial of Plaintiff's accommodation occurred on September 21, 2016, when Defendant Peterson required Plaintiff to take a quiz during the class. Defendant Bautista allowed Plaintiff his accommodation, but required Plaintiff to take his tests the same day as the other students.

To the extent that Plaintiff attempts to allege discrimination because MJC did not handle his complaints in an appropriate manner and is seeking injunctive relief requiring better training of instructors and administrators regarding the legal rights of students with disabilities and their legal obligations under the applicable law, these allegations are insufficient to state a claim for

discrimination under the ADA and RA.

> Under Rehabilitation Act regulations, educational institutions are required to provide a disabled student with reasonable accommodations to ensure that the institution's requirements do not discriminate on the basis of the student's disability. Similarly, the ADA's implementing regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity." The Supreme Court has made clear that an educational institution is not required to make fundamental or substantial modifications to its program or standards; it need only make reasonable ones.

Zukle v. Regents of Univ. of California, 166 F.3d 1041, 1046 (9th Cir. 1999) (internal citations omitted).

Plaintiff complains that the disability counselor did not inform him of his rights, however, there are no factual allegations to demonstrate that by failing to inform Plaintiff of his rights he was denied of any a benefit or service of the educational facility or that he was discriminated against because of his disability. Similarly, Plaintiff complains that he was not satisfied with the investigation that was conducted following his complaint. Again, there are no factual allegations to show that any inadequate investigation was because Plaintiff was disabled or that he was denied any benefit or service due to an inadequate investigation.

Plaintiff's complaint demonstrates that he received an academic accommodation plan for his educational program and Plaintiff does not allege that the accommodations provided by the plan were inadequate. Liberally construed, Plaintiff's complaint alleges that although he received an accommodation to take his tests in the testing center, he is being denied the accommodation because the testing center is not open in the evening when he is taking classes. The Court finds that at the pleading stage this is sufficient to state a cognizable claim for discrimination under the ADA and the RA.

### C. Policy and Custom Claims

Plaintiff brings his third cause of action against Defendant YCCD alleging that there is a policy or custom of demonstrating deliberate indifference to the rights of disabled persons. Plaintiff alleges that there is a policy of failing to exercise reasonable care in the hiring of instructors, to discourage students from putting their complaints in writing and reporting violations

8

to the Office of Civil Rights; and failing to adequately supervise and train instructors and administrators.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). A suit brought against government officials in their official capacity is generally equivalent to a suit against the government itself. McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986); Seven Up Pete Venture v. Schweitzer, 523 F.3d 948, 952 (9th Cir. 2008). Therefore, officials may be held liable if " 'policy or custom' . . . played a part in the violation of federal law." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (quoting McRorie, 795 F.2d at 783). The official may be liable where the act or failure to respond reflects a conscious or deliberate choice to follow a course of action when various alternatives were available. Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989); see Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010).

A policy can be one of action or inaction, but both claims require that the plaintiff prove a constitutional violation has occurred. Waggy, 594 F.3d at 713. To prove liability for an action policy the plaintiff "must . . . demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy." Id. at 713. Liability for failure to act requires that Plaintiff show that the "employee violated the plaintiff's constitutional rights;" the agency "has customs or policies that amount to deliberate indifference;" and "these customs or policies were the moving force behind the employee's violation of constitutional rights." Long, 442 F.3d at 1186.

1. Failure to exercise due care in hiring instructors

Plaintiff alleges that YCCD failed to exercise due care in hiring instructors. However, the first amended complaint is devoid of any factual allegations to support the claim. Threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements are not sufficient to state a claim. Iqbal, 556 U.S. at 678. Plaintiff has failed to allege a plausible claim that Defendant YCCD failed to exercise reasonable care in hiring instructors.

1          2.     Policy of discouraging students from filing complaints

Plaintiff also alleges that there was a policy and practice of YCCD, administrators, faculty and staff to discourage students from exercising their right to put complaints in writing and reporting such violations to the Office of Civil Rights. Plaintiff contends that Claudia Pueblo did not want to write to Defendant Peterson. Plaintiff alleges that Ms. Pueblo wanted Plaintiff to wait and see if he had further problems with Defendant Peterson, but when Plaintiff refused, an email was sent to Defendant Peterson addressing the issue. Even accepting these allegations as true they provide no support for the claim that there was a policy of discouraging students from filing a complaint.

Plaintiff also alleges that Dean Mendez discouraged him from filing a complaint and asked for Plaintiff to allow them to handle his complaint internally. However, Dean Mendez also told Plaintiff that he would be able to file a complaint at a later time. Although Plaintiff alleges that Defendant Banuelos loudly and sternly "falsely accused" Plaintiff and his mother of going to the Office of Civil Rights first (FAC at 18), it is unclear how Defendant Banuelos frustration in trying to resolve the situation with Plaintiff and his mother would indicate a policy of discouraging students from filing written complaints.

Plaintiff's factual allegations are insufficient to demonstrate that there was a policy of discouraging students from filing written complaints. In this instance, there are no allegations that anyone from YCCD or MCD interfered with Plaintiff's ability to file a written complaint. Although Dean Mendez suggested that he conduct an informal investigation first, Dean Mendez also informed Plaintiff that he would be able to file a written complaint. (FAC 15.) The fact that Dean Mendez informed Plaintiff that he could file a formal complaint is contrary to the existence of such a policy. Plaintiff has failed to state a claim that YCCD had a policy of discouraging students from filing written complaints.

           3.     Inadequate training and supervision of instructors and administrators

Plaintiff also alleges a policy of inadequately training and supervising instructors and administrators. While Plaintiff alleges that Defendant Bautista required him to take tests on the same day as the other students in his class, there are no allegations in the first amended complaint

that she failed to honor his academic accommodation plan. In fact, the complaint demonstrates that Plaintiff was allowed to continue taking his tests in the testing center as required by his accommodation. (FAC 11 (with six hours less to study, Plaintiff's grades in her class declined as a result).)

Plaintiff alleges that on a single occasion Defendant Peterson required him to take a test with the class rather than allowing Plaintiff to take the test in the testing center. Contrary to Plaintiff's allegation that administration ratified the conduct, an email addressing the incident was sent to Defendant Peterson after Plaintiff reported the incident. Plaintiff alleges that Defendant Peterson read the email out loud to the class and another student commented that the students should not be seeing it. (FAC 14.)

Plaintiff also claims that employees and administrators did not properly handle his complaint against Defendants Bautista and Peterson; and therefore, the instructors believed their actions would be tolerated. The word policy generally implies a course of action that is consciously chosen among various alternatives. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). In order to impose liability based on a single incident, the plaintiff must demonstrate that the incident was caused by an existing, unconstitutional policy that can be attributed to a policymaker. Id. Plaintiff's allegations here are insufficient to demonstrate that any such policy existed. The only incident which plausibly alleges a violation of Plaintiff's accommodations would be the incident in which Defendant Peterson had Plaintiff take the test with the rest of the class. Defendant Peterson recognized that Plaintiff had an accommodation plan allowing him to test at the testing center, but told Plaintiff that the test was very easy. In fact, Plaintiff scored 85 on the test. Further, after Plaintiff complained, the incident was addressed through an email sent to Defendant Peterson. Although Plaintiff does not include the substance of the email, it appears clear that it did not condone the actions of Defendant Peterson in failing to recognize Plaintiff's accommodation. The factual allegations in the complaint do not show that there was a policy of condoning instructors failure to comply with student accommodation plans.

Plaintiff has failed to allege a plausible claim against YCCD based on policy or custom.

///

# IV.

# CONCLUSION AND RECOMMENDATION

Plaintiff's first amended complaint states a cognizable claim against Defendant Peterson for retaliation in violation of the First Amendment and against Defendants YCCD and MJC for violation of the ADA and RA. However, Plaintiff's first amended complaint fails to state any other cognizable claim. Plaintiff has previously been provided with the legal standards that apply to his claims and was granted leave to file an amended complaint.

Based upon the allegations in Plaintiff's original and first amended complaint, the Court is persuaded that Plaintiff is unable to allege any additional facts that would support any other claims alleged in the original and first amended complaint, and further amendment would be futile. Washington v. Lowe's HIW Inc., 75 F.Supp.3d 1240, 1245 (N.D. Cal. 2014), appeal dismissed (Feb. 25, 2015); see also Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) (A district court may deny leave to amend when amendment would be futile.) Based on the nature of the deficiencies at issue, the Court finds that further leave to amend is not warranted. Lopez, 203 F.3d at 1130; Noll v. Carlson, 809 F.2d 1446-1449 (9th Cir. 1987).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's first amended complaint against Defendant Peterson for retaliation in violation of the First Amendment; and against Defendants YCCD and MCE for discrimination in violation of the ADA and RA for failing to provide access to the testing center during evening classes;

2. The remaining claims be dismissed without leave to amend for failure to state a claim; and

3. Defendants Banuelos and Bautista be dismissed from this action for Plaintiff's failure to state a claim against them.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of service of this recommendation, Plaintiff may file written objections to this findings and recommendations with the Court. Such a document should be captioned "Objections to Magistrate

Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 10, 2018**

UNITED STATES MAGISTRATE JUDGE